Cite as 2026 Ark. App. 211

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-25-251

| | | |
|---|---|---|
| | | Opinion Delivered April 1, 2026 |
| RACHEL HERNDON | | APPEAL FROM THE PULASKI |
| | APPELLANT | COUNTY CIRCUIT COURT, |
| | | SEVENTEENTH DIVISION |
| V. | | [NO. 60DR-25-172] |
| TYLEEK MATTHEWS | | HONORABLE BRENT EUBANKS, |
| | | JUDGE |
| | APPELLEE | |
| | | REVERSED |

**KENNETH S. HIXSON, Judge**

Appellant Rachel Herndon was awarded a one-year order of protection against appellee Tyleek Matthews. Tyleek does not appeal from the order of protection. Rather, in the order of protection, the trial court awarded Tyleek visitation rights with Rachel's son, MC. Rachel appeals from the provision in the order of protection awarding Tyleek alternating-weekend visitation with MC.

Rachel argues that the trial court erred in awarding Tyleek visitation because Tyleek's paternity has never been adjudicated, overnight visitation with Tyleek was not in the child's best interest, and her due-process rights were violated because she was not on notice that visitation would be an issue at the hearing on her petition for an order of protection. We reverse the award of visitation in the order of protection.

On January 14, 2025, Rachel filed a petition for an order of protection against Tyleek on behalf of herself and her son, MC, born on 11/10/23. The petition stated that the parties have a child in common, MC, and alleged that there was an immediate and present danger of domestic abuse. Specifically, Rachel alleged that Tyleek had destroyed her apartment, threatened to kill her, and threatened to shoot up her mother's house where she and MC reside. On January 24, 2025, the trial court entered an ex parte order of protection against Tyleek that temporarily prohibited his contact with Rachel and MC, and a hearing on the petition was scheduled for February 12, 2025.

Rachel testified at the hearing on her petition for an order of protection. Rachel testified that Tyleek has undiagnosed mental-health issues, that he is a known gang member, and that he has outbursts during which he destroys her property or steals her car. She stated that during a phone call, which she recorded and introduced into evidence, Tyleek physically threatened her. Rachel stated that before she began recording, Tyleek threatened to kill her and that during the recorded portion of the phone call, Tyleek stated he is part of a gang and made threats against both Rachel and Rachel's mother. Rachel stated that he threatened to shoot up her mother's house and that Tyleek was later seen with a firearm near her mother's house. During the phone call, Tyleek told Rachel, "I'm finna tear your shit up," "I'm going to f*** your momma's shit up," and "I'm going to make you hurt." Rachel stated that, due to Tyleek's conduct, she feared for her safety and for MC's safety. Rachel acknowledged, however, that Tyleek had never made any threats against MC.

Tyleek testified that although he and Rachel were never married, they do share a child together, MC.[1] Tyleek stated that Rachel has custody of MC and that there is no visitation arrangement. Tyleek did not deny making the remarks recorded during the phone call, but he denied being in a gang, and he denied threatening Rachel. Tyleek also stated, "I just want to take care of my son, but she won't let me because I don't want to be with her anymore."

At the conclusion of the testimony at the hearing on the order of protection, the trial court found from the bench that Rachel had met her burden of proof with respect to herself and that it would grant a one-year order of protection against Tyleek. The trial court found further that with respect to MC, the burden of proof had not been met and that it would deny the petition for an order of protection regarding MC.

After the trial court made its findings on the petition for an order of protection, which was the only matter before the court at this hearing, for some reason the trial court delved into the issues of child custody and visitation. The trial court stated, "What we have from there to do though is deal with custody and visitation, and quite frankly, this is not the best way to do it." The trial court stated that although it had "some discretion" as to these issues, "the proper way to do that is in the context of a paternity case where we can address the court, visitation, and custody, and go through that procedure." The trial court then stated that it would offer Tyleek visitation every other weekend from Friday at 6:00 p.m. through Sunday at 6:00 p.m. and stated, "If you choose not to exercise it, that's up to you."

---

[1]Rachel acknowledged at the hearing that Tyleek had signed the birth certificate.

The trial court stated, "A paternity case is actually the better proceeding," and when Rachel objected to the visitation, the court told her, "If you think a paternity case would more fully develop your case and establish custody in a way, then you can present a full case, that's fine."

The trial court stated:

> If Mr. Matthews chooses not to exercise the visitation I'm allowing, then he doesn't. But you can't prohibit that just because you don't want him to have him. So, right now there is going to be a visitation order in place. And I think y'all need to come back for paternity and deal with custody and deal with child support at some point.

Rachel objected and stated:

> Your Honor, he's never had my child overnight. He does not have any belongings for my child. He doesn't know anything about my child. He has nothing for my child. He has no clothing. He has no diapers. He has nothing to support my child. He has no stable home. He has nothing, Your Honor.

The trial court stated that this would be its ruling, and upon inquiry of the parties, the court decided that the visitation exchanges would take place at a police station and would be between Tyleek and Rachel's mother.

On February 12, 2025, the trial court granted Rachel's petition and entered a final order of protection that prohibited Tyleek from having any contact with her for a period of one year. Relevant to this appeal, the order of protection also provided that Rachel was awarded custody of MC and that Tyleek was awarded visitation every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m. beginning February 14, 2025, with the exchanges to occur at a police station and facilitated by Rachel's mother. Rachel timely appealed.

4

In this appeal, Rachel argues that the trial court erred in awarding Tyleek visitation with MC because Tyleek's paternity has never been adjudicated. Rachel states that although Tyleek signed the birth certificate, it is undisputed that a court has never adjudicated paternity. She argues further that, even had there been an adjudication of paternity, it was not in MC's best interest to have overnight visitation with Tyleek, and this was not the proper forum for such a determination because the only issue before the court was whether to enter an order of protection against Tyleek. Finally, Rachel also argues that her due-process rights were violated because she was not on notice that visitation would be an issue at the hearing on her petition for an order of protection. We agree that the provision for visitation in the final order of protection must be reversed.

The only pleading before the trial court was Rachel's petition for an order of protection against Tyleek on behalf of herself and MC. The record does not show that Tyleek had ever filed a petition to establish his paternity of MC, and in this proceeding, Tyleek did not file any petition for any relief, much less for visitation.

Arkansas Code Annotated section 9-10-104(2) (Repl. 2020) provides that a petition to establish paternity may be filed by a putative father, and Ark. Code Ann. § 9-10-102(b) (Supp. 2025) states, "An action to establish the paternity of a child or children shall be commenced and proceed under the Arkansas Rules of Civil Procedure applicable in circuit court[.]"

Arkansas Code Annotated section 9-10-113 (Repl. 2020) provides:

(a) When a child is born to an unmarried woman, legal custody of that child shall be in the woman giving birth to the child until the child reaches eighteen (18) years of age unless a court of competent jurisdiction enters an order placing the child in the custody of another party.

(b) A biological father, *provided he has established paternity in a court of competent jurisdiction*, may petition the circuit court in the county where the child resides for custody of the child.

(c) The court may award custody to the biological father upon a showing that:

(1) He is a fit parent to raise the child;

(2) He has assumed his responsibilities toward the child by providing care, supervision, protection, and financial support for the child; and

(3) It is in the best interest of the child to award custody to the biological father.

(d) *When in the best interest of a child*, *visitation shall be awarded* in a way that assures the frequent and continuing contact of the child with the mother and the *biological father*.

(Emphasis added.) Arkansas Code Annotated section 9-10-114 (Repl. 2020) provides, "When any circuit court in this state *determines the paternity of a child* and orders the father to make periodic payments for support of the child, *the court may also grant reasonable visitation rights to the father and may issue such orders as may be necessary to enforce the visitation rights*." (Emphasis added.)

At the hearing on Rachel's order of protection, the trial court made its rulings on her petition and then, inexplicably, the court sua sponte took up the issue of whether to grant Tyleek visitation with MC. This was improper because, as recognized by the trial court at the hearing, Tyleek's paternity had not yet been established in a court of competent jurisdiction, and as stated by the trial court itself, "[T]he proper way to [decide custody and

6

visitation] is in the context of a paternity case where we can address . . . visitation, and custody, and go through that procedure." Pursuant to the statutory authority recited above, a putative father may not be awarded visitation until he has established his paternity of the child.

The problem was compounded further because the only issue at the hearing was whether Tyleek had inflicted fear of imminent physical harm, bodily injury, or assault against Rachel or MC to warrant the issuance of a protective order. Unsurprisingly, because visitation was not an issue, there was little testimony bearing on the issue of whether visitation with Tyleek was in MC's best interest. Nor did the trial court engage in any best-interest analysis before awarding visitation.

The primary consideration regarding visitation is the best interest of the child. *Webster v. Jones*, 2018 Ark. App. 406. Important factors the court considers in determining reasonable visitation are the wishes of the child, the capacity of the party desiring visitation to supervise and care for the child, problems of transportation and prior conduct in abusing visitation, the work schedule or stability of the parties, and the relationship with siblings and other relatives. *Id.* We will not reverse the trial court's findings in this regard unless they are clearly erroneous, meaning that, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*

The record shows that Tyleek never established his paternity of MC; Tyleek did not file any petition seeking visitation; and the sole purpose of the hearing was to decide whether

Rachel was entitled to an order of protection. And even had Tyleek's paternity been established, there was insufficient evidence at the hearing from which to conclude that visitation was in MC's best interest, nor did the trial court make such a finding. On this record, we are left with a definite and firm conviction that the trial court committed a mistake in granting visitation to Tyleek. Accordingly, we reverse the award of visitation in the order of protection.

Reversed.

ABRAMSON and MURPHY, JJ., agree.

*River City Law, PLLC*, by: *Coeli Clemons*, for appellant.

One brief only.